Deming v. Nichols.

J. A. DEMING, Chief of Police *et al. v.* JOE NICHOLS.

(*Jackson.*   April Term, 1916.)

**BAIL.   Pending appeal.   Violation of ordinance.**

Defendant convicted in a city court of carrying concealed weapons in violation of city ordinance, being unable to furnish an appeal bond, might take the paupers' oath and have his case reviewed by the circuit court, but was not entitled to a discharge from custody pending the appeal, unless he gave a bail bond in a sufficient amount to appear and perform whatever judgment might be rendered by the appellate court.

Acts cited and construed: Acts 1909, ch. 407.

Cases cited and approved: State v. Taxing Dist. of Shelby Co., 84 Tenn., 251; State v. Mason, 71 Tenn., 649; Greenwood v. State, 65 Tenn., 567; State v. Haynes, 104 Tenn., 406; Mayor of Nashville v. Fisher, 1 Shan. Cas., 345.

Cases cited and distinguished: O'Haver v. Montgomery, 120 Tenn., 448; Memphis v. Schade, 59 Tenn., 579.

Code cited and construed: Sec. 5907 (S.).

Constitution cited and construed: Art. 6, sec. 1.

FROM MADISON

Appeal from the Circuit Court of Madison County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— S. J. EVERETT, Judge.

W. N. Key, for plaintiff.

T. W. Pope, for defendants.

Mr. A. R. Gholson, Special Judge, delivered the opinion of the Court.

The defendant Joe Nichols was arraigned before the city judge of the municipality of Jackson on a charge of carrying concealed weapons. He was convicted, fined $50, and committed to prison in default of payment. He seasonably prayed and was granted an appeal to the circuit court of Madison county on condition that he furnish an appeal bond in the penalty of $100. After exhausting every effort to make the bond he tendered an oath in lieu thereof, as provided for poor persons, but the city judge denied his right to prosecute his appeal upon the oath, though not questioning the sufficiency, form or substance of the oath. Nichols then presented to Honorable S. J. Everett, circuit judge, his petition for a writ of *habeas corpus*, setting out the facts just stated, and also stating that he was not guilty of the charge preferred against him in the city court for which the fine was imposed. The writ of *habeas corpus* was duly issued, and on the hearing before Judge Everett it was held that defendant was improperly detained and should be discharged, and the oath taken in lieu of the bond. J. A. Deming, chief of police, and the city of Jackson, excepted and appealed to the court of civil appeals. That court sustained the action of the circuit judge

and a *certiorari* has been filed asking that this court review the action of the court of civil appeals.

Under section 1 of article 6 of the Constitution of Tennessee, the judicial power of this State is vested in certain courts, and the legislature was authorized to vest such jurisdiction in corporate courts as might be deemed necessary. In pursuance of the said constitutional provision the legislature of this state, by section 5907 of Shannon's Code, provided that the judicial power of the State should be vested in justices of the peace, recorders of certain towns and cities, county courts, criminal courts, common law and chancery courts, and the supreme court.

The present municipal corporation of the city of Jackson was created by chapter 407 of the Acts of 1909. Section 14 of said act provided that the mayor and board of aldermen, known as the legislative council, of said city, should have full power and authority:

Subsec. 5. "To provide for the prevention and punishment of offenses against the person, public and private property, public morality and decency, the public health, public peace, public justice, and public policy committed within said city, and to define such offenses."

Subsec. 25. "To regulate the police of the city; to impose fines, forfeitures, and penalties, and provide for the terms of imprisonment for the breach of any ordinance, and to provide for their recovery and appropriation."

Subsec. 27. ''To prevent and punish by pecuniary penalties or imprisonment all breaches of the peace, noise, disturbances, or disorderly assemblies in any place in the city.''

Subsec. 31. ''To provide by ordinance 'for the taxation and collection of reasonable costs incident to the trial of cases in the city court before the mayor or recorder.''

Section 18 of said act is as follows:

''Be it further enacted, that said mayor and aldermen of the city of Jackson shall have power by the passage of necessary laws or ordinances to establish a workhouse under proper provisions, government, and restrictions for the punishment of offenders against the laws and ordinances of said city, and to compel persons who are convicted and fined for violation of the laws and ordinances of the city, and who fail or refuse to pay the fine and cost, to work out the same upon the public streets or works of said city at the rate of one dollar ($1) per day, to be credited upon said fines and costs and in such way as may be prescribed.''

The ordinance under which the defendant was tried, convicted, and held, does not appear in the record, but as no point was made thereon we will assume that the same was duly passed and in force as authorized by the charter provisions quoted above. The question then arises: Did the defendant have the right to prosecute his appeal from such fine on the pauper's oath?

Deming v. Nichols.

"In this country there are two modes recognized for enforcing penal ordinances. One is an action of debt to recover the penalty, and the other is the ancient and familiar summary proceeding on information of complaint. At common law the action was, in form, either debt or assumpsit. It was merely to recover the penalty imposed for the violation of the ordinance. In the action of assumpsit, the theory was that there had been a breach of duty, and by fiction of law it was assumed that the defendant had promised the municipal corporation, which in most cases became the plaintiff, to perform the duty. The action of debt was allowable, as the penalty was for a sum certain and in the nature of what might be termed liquidated damages." McQuillin Municipal Corporations, section 1033, citing 2 Dillon Municipal Corporations (5th Ed.), section 635, and Tiedeman, Mun. Corp., section 156.

"Sometimes the action is regarded as criminal, especially where the offense constitutes a misdemeanor under the laws of the State. Such proceeding is civil in form and *quasi* criminal in character. It is governed by the rules of pleading applicable to civil actions, but if it were solely civil, no fine or imprisonment could be inflicted. It is therefore a *quasi* civil and criminal action. Partaking of some of the features of each, its similitude to either is not complete. In pleading it is more like a civil action, but in its effect and consequences it more nearly resembles a criminal

proceeding.'' McQuillin, Municipal Corp., section 1034.

A prosecution for a violation of an ordinance is partly criminal and partly civil in nature. *O'Haver* v. *Montgomery,* 120 Tenn., 448, 111 S. W., 449, 127 Am. St. Rep., 1014.

''Proceedings instituted by the proper officers of a municipality to recover penalties for a violation of such ordinances are not State prosecutions, nor is a judgment therein a bar to a prosecution for an offense against the laws of the State committed by the same act.'' *State, etc.,* v. *Taxing Dist. of Shelby County,* 16 Lea, 251; *State* v. *Mason,* 3 Lea, 649; *Greenwood* v. *State,* 6 Baxt., 567, 32 Am. Rep., 539.

On appeal from the city court to the State court the trial is *de novo* and in the same manner as trials on appeal from a justice's court to the circuit or district court. The circuit court is to try the case with the same discretion as the recorder himself did and may in its discretion reduce the fine. McQuillin on Municipal Corporations, section 1094; *Memphis* v. *Schade,* 12 Heisk., 579.

''Since an ordinance without a penalty would be nugatory, the general doctrine uniformlly prevails, that, a municipal corporation which has power to pass the ordinace has, as a necessary incident thereto, implied power to provide for its enforcement by appropriate and reasonable fines against those who break it. . . . The general rule applying to municipal corporations is that charter power to restrain

and prohibit a specific thing implies power to punish its commission.'' McQuillin, Municipal Corporations, section 710.

Mr. Chief Justice Neil, in an able opinion, citing many authorities, in the case of *O'Haver* v. *Montgomery,* 120 Tenn., 448, 111 S. W., 449, 127 Am. St. Rep., 1014, among other things, said:

"In truth, when a violator of a municipal ordinance is arrested and brought before the municipal court, he is tried for an offense committed against the laws of the corporation; but, in the absence of apt legislation to the contrary, his punishment is in the form of the assessment of a penalty. The practice partakes of both a civil and criminal character. He is arrested on warrant as in criminal cases, and if found guilty a judgment is entered against him as for a fine, and on failure to pay the amount assessed against him he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment he may appeal, as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the circuit court, where the matter will be heard *de novo,* the rules of practice applicable to civil cases applying in such trial; but at last the purpose of the action is punishment. So it is perceived the action is partly criminal and partly civil; a criminal action in substance and purpose, and partly civil and partly criminal in the practice governing it. When we characterize the action as being of a criminal nature, we do not mean to be un-

derstood as using the term wholly in the sense in which it is applicable to actions brought by the State in the form of indictments and presentments for violations of the criminal laws of the State, but rather by analogy, and for want of a better term. *State* v. Haynes, 104 Tenn., 406, 409, 58 S. W., 120. A municipality is a government within itself, and must have the power to punish for offenses against its laws, and must be able to bring that punishment to bear and to make it effective by its own agencies, that is, through its own courts and officers. However, the right of appeal may be given, and generally is given, and, if exercised, the municipality appears in another jurisdiction; that is, in the courts of the State, as a suitor to recover the penalty which it has assessed against the violator of its laws. But the larger court, while trying the controversy as a civil suit, will see to it that the municipality, if successful, shall have there the same sanctions for the enforcement of its laws as if the trial had terminated in the municipal court. In truth, the action is in its various aspects a hybrid one, partly criminal and partly civil.''

Further on in said opinion the same learned judge said:

''An ordinance without a penalty for its violation is a dead letter. A penalty that cannot be enforced is but a vain threat, evoking the derision of mankind. The method of enforcement is unmistakably pointed out by the legislature; that is, failure to pay the penalty shall be followed by imprisonment until secu-

Deming v. Nichols.

rity is furnished, or the payment made in money or labor. A law with such sanctions has dignity and force. Without them it is but a *brutum fulmen.*"

The city of Jackson under the charter above quoted had the power to provide for the prevention and punishment of the offense for which the defendant had been arrested. It also had the power to compel the defendant when convicted and fined, upon failure to pay the fine, to work out said fine and cost, as provided in its charter. To hold that the defendant, being unable to give security on the required bond for appeal, might take the pauper's oath and thereby secure his discharge, would in effect be to nullify the judgment of the city court against him. The purpose of said proceeding in the city court was punishment, and if he could thus avoid the punishment assessed against him, the entire proceeding would be in vain.

A municipal corporation is a subordinate branch of the domestic government of a State. *Mayor of Nashville* v. *Fisher,* 1 Shan. Cas., 345. A municipal corporation being such an arm of the State government the courts of the State should see that the purposes for which it was created are carried out, and that all proper decrees and judgments of its courts are enforced as contemplated by the law.

A person charged with violating a State law, or one who has been convicted in an inferior court for the violation of a State law, while authorized to appeal and have his case reviewed by an appellate court, would not be discharged pending such appeal, unless

he gave a bail bond to appear and answer the judgment of the appellate court. A proper construction of our laws authorizing appeals should be such as to carry into effect the judgments and decrees of the appellate courts when rendered. If this defendant were permitted to be discharged after having been fined and convicted in the city court upon the pauper's oath, what assurance would there be that he would be present for the decree of the appellate court to be carried into effect?

To allow those who have been tried and convicted in municipal courts to be discharged upon taking the pauper's oath would in effect declare nugatory all proceedings in such courts against offenders out of whom no judgment could be collected in a civil proceeding. A sound public policy forbids that such be declared the effect of our laws controlling appeals in such cases.

We therefore hold that while the defendant might have taken the oath required for poor persons and had his case reviewed by the circuit court, yet that he should have been held by the municipal authorities pending such appeal, unless he gave a bail bond in a sufficient amount to appear and perform whatever judgment might be rendered by the appellate court.

It follows, therefore, that the court of civil appeals and the circuit judge were in error in ordering the defendant discharged.