IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2001 Session

# City of Church Hill, Tennessee v. Patrick H. Reynolds, III

### Appeal from the Circuit Court for Hawkins County
### No. 5089 J    John K. Wilson, Judge

### FILED MARCH 12, 2001

### No. E2000-01376-COA-R3-CV

Patrick H. Reynolds, III ("Defendant") was issued a Misdemeanor Citation alleging violations of multiple city ordinances of the City of Church Hill ("Plaintiff") over a one-month period. Defendant was found guilty in the Church Hill City Court of violating these ordinances. Defendant appealed to the Hawkins County Circuit Court which likewise found the Defendant guilty of violating the ordinances. The Circuit Court, however, found Defendant guilty of several violations on days for which the Defendant was tried by the City Court with no finding of guilt by the City Court. Because Defendant cannot be placed in double jeopardy for violations of these municipal ordinances, we reverse the judgment of the Circuit Court finding Defendant guilty for violations on days for which Defendant was tried by the City Court with no finding of guilt made by the City Court. We affirm the Circuit Court's determination with regard to the remaining violations.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgment of the Trial Court Affirmed in Part and Reversed in Part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Douglas T. Jenkins, Johnson City, Tennessee, for the Appellant Patrick H. Reynolds, III.

K. Erickson Herrin, Johnson City, Tennessee, for the Appellee City of Church Hill, Tennessee.

## OPINION

### Background

On March 2, 1999, Patrick H. Reynolds, III. ("Defendant") was issued a Misdemeanor Citation to appear in the Church Hill City Court. The citation was for violations of three municipal ordinances of the City of Church Hill ("Plaintiff"). The citation claimed violations of §§ 8-301, 8-302, and 8-304 of the Church Hill Municipal Code occurring over a thirty one day period. The applicable provisions of the Church Hill Municipal Code are as follows:

> **8-301. Prohibited acts.** It shall be unlawful for the owner(s) or occupant(s) of real property within the municipal limits of Church Hill to allow litter, debris, trash, or discarded items of personal property to accumulate and remain on said property. Any items of personal property which are damaged, dilapidated, or which are lying or stacked about the property in a state of disarray shall be deemed to be discarded for the purposes of this chapter. All litter, trash, debris, and discarded items of personal property shall be placed by the property owner or occupant in secured refuse containers for prompt disposal. If the owner or occupant desires to retain possession of personal property items which would otherwise fall within the prohibitions of this chapter, he or she shall place the items within a permanent[ly] enclosed structure lawfully erected on the premises so as to shield such items from the view of the public. The provisions of this chapter are not intended to allow the operation of a motor vehicle repair shop on property not zoned for such a business operation.

> **8-302. Vehicle salvage parts regulated.** It shall be unlawful for the owner(s) or occupant(s) of real property to allow new or used motor vehicle parts, vehicle bodies, frames, or tires to be strewn around or upon said real property. Motor vehicle parts, damaged or salvaged vehicle bodies and frames, and tires of all kinds shall be contained, stored, or otherwise enclosed in a permanent structure lawfully erected on the premises. Any use of motor vehicle parts on said premises must comply with all applicable municipal zoning and building regulations.

> **8-304. Automobile storage lot permit.** The use of property within the corporate limits as a storage lot or parking grounds for infrequently operated, inoperable, untagged, or damaged motor vehicles is expressly forbidden unless the property owner or occupant obtains a special permit to utilize his premises as an automobile

storage lot. A business which repairs automobiles shall not be required to obtain such a permit unless automobiles are stored or parked overnight on the premises. The permit shall be issued by the City's Building Inspector and shall specify the permissible parking arrangement of the vehicles upon the premises so as to assure access by municipal service and emergency vehicles to the parked vehicles and to the structures on the property. Businesses engaged in the repair of motor vehicles shall not park or allow the parking of their customers' inoperable vehicles upon the municipal rights of way adjacent to their premises. For the purposes of this Chapter, "infrequently operated motor vehicle(s)" shall mean a motor vehicle which has not moved from its present place of parking for more than fourteen (14) consecutive days. For the purpose of this Chapter, "inoperable motor vehicle(s)" includes any vehicle with a flat tire, any vehicle which will not start, or any vehicle incapable of being lawfully operated on the streets within the City.

The penalty for a violation of any of these provisions is a fine of not less than Twenty-Five Dollars ($25.00) nor more than One Hundred Dollars ($100.00) for each day that the provision is violated, with each day constituting a separate offense.

The chronology of events is important to the resolution of the issues, and we will attempt to piece together the events as they occurred. The record, however, is not entirely clear due in large part to the fact that neither party provided this Court with a complete transcript of the hearings in the City Court.

Defendant originally appeared in the City Court on March 16, 1999. On that day, Defendant claims that the Judge initially found him guilty of violating each of the three ordinances for one day. Defendant claims that the Judge stated he was entitled to notice of the alleged violations before he could be cited, and the Judge found him guilty of these violations on days after he received the citation and notice, which was March 2, 1999. Plaintiff claims that the Judge initially found Defendant guilty of violating the ordinances for a period of twenty days, but after Defendant convinced the Judge that he was entitled to notice before he could be charged, the Judge reduced the fine to a one day violation for each ordinance. The Judge ordered Defendant to return to court for a "check-back" to see if any improvements had been made with regard to the condition of his property. As stated previously, neither Plaintiff nor Defendant provided this Court with a copy of the transcript of the proceedings which occurred on March 16, 1999, and no judgment was entered by the City Court on that date.

Defendant initially was to return to the City Court for the "check-back" on April 20, 1999, but the Judge was unavailable and the matter was reset for May 18, 1999. On May 18, the parties returned to City Court and on that date, Defendant claims the City Court Judge convicted him "*on the original citation* in the city court for violating two of the ordinances, 8-302 and 8-304, for

a period of thirty days *between the times of March 16 and April 20.*" (italics in original) Plaintiff also asserts in its brief that Defendant was convicted for violations occurring between March 16 and April 20. The City Court Judge assessed fines and costs totaling $1,617.25. The Judgment entered by the City Court on May 18, 1999, was for the following violations of the three municipal ordinances:

1. § 8-301 for the "first" violation, with a fine and costs totaling $55.75;

2. § 8-302 for "first & 30 days subsequent violations," with a fine and costs totaling $780.75; and

3. § 8-304 for "first & 30 days subsequent violations," with a fine and costs totaling $780.75.

Defendant appealed the convictions *de novo* to the Hawkins County Circuit Court. At the *de novo* hearing, Defendant moved by oral motion to dismiss the charges. Defendant argued, *inter alia*, that because the City Court found him guilty only for violations after March 16, 1999, the prohibitions against double jeopardy would prevent him from being retried on any alleged violations occurring prior to that time. This motion was denied. The Circuit Court concluded that Defendant was in violation of all three municipal ordinances for the four day period prior to March 2, 1999, the date on which Defendant was issued the citation. Defendant was fined $25.00 for each violation, for a total of $300.00, plus court costs.

Defendant appeals the determination of the Circuit Court, claiming he was subject to double jeopardy when the Circuit Court Judge found him guilty of violations on days for which he was found not guilty by the City Court Judge. Defendant also claims that the doctrine of merger prevents his being convicted for violations of both §§ 8-301 and 8-302.

## Discussion

The issue of whether the double jeopardy clauses of the United States Constitution or the Tennessee Constitution apply in this case is a question of law. Therefore, the standard of review is *de novo* upon the record without a presumption of correctness. *See Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

The double jeopardy clause of the Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb. . . . " The double jeopardy clause of the Tennessee Constitution, Article 1, § 10, provides that "no person shall, for the same offense, be twice put in jeopardy of life or limb." *Stuart v. Department of Safety*, 963 S.W.2d 28, 32 (Tenn. 1998). There are three fundamental principles that underlie the double jeopardy provisions of both Constitutions: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after a conviction; and (3) protection against multiple

punishments for the same offense. *Id*. Although these three fundamental principles are the same under either Constitution, it has been held that the Tennessee Constitution provides a greater measure of protection against double jeopardy than does the federal Constitution in certain circumstances. *Stuart,* 963 S.W.2d at 32 (citing *State v. Denton*, 938 S.W.2d 373, 381-82 (Tenn. 1996)).

In *City of Chattanooga v. Myers*, 787 S.W.2d 921 (Tenn, 1990), the issue addressed by our Supreme Court was whether a defendant is entitled to a jury trial on appeal to circuit court from a judgment of a municipal court based on a violation of a city ordinance. In *Myers,* the Court set forth the long and troubled history of cases discussing the unique body of law with regard to municipal ordinances. Courts have wrestled with how to deal with municipal ordinances because they are not easily classified as civil or criminal, as demonstrated by the fact that they have been referred to as civil, criminal, and even quasi-criminal over the years. According to the Court in *Myers*, the "clear" rule to be gleaned from a review of the various cases is that, as far as general procedural matters and matters of appeal are concerned, cases involving violations of municipal ordinances are civil in nature. Even though these cases are considered "civil" from a procedural standpoint, the prohibition against double jeopardy nevertheless applies. In *Myers*, the Court discussed the leading Tennessee case on the applicability of the double jeopardy prohibition to violations of municipal violations, *Metropolitan Government of Nashville & Davidson County v. Miles*, 524 S.W.2d 656 (Tenn. 1975), as follows:

> In *Miles* the Court accepted the argument that the constitutional provisions against double jeopardy precluded an appeal to circuit court by the Metropolitan Government from a dismissal on the merits by the general sessions court of a prosecution for the violation of a municipal ordinance prohibiting interfering with a police officer. Relying on *O'Haver* [*v. Montgomery*, 120 Tenn. 448, 111 S.W. 449 (1908)] and *O'Dell* [*v. City of Knoxville*, 214 Tenn. 237, 379 S.W.2d 756 (1963)], . . . the Metropolitan Government argued that such an appeal was constitutional because the proceeding was civil and not criminal. Justice Brock writing for a three judge majority held, however, that *O'Haver* and *O'Dell* had been "at least impliedly" overruled by *State v. Jackson*, 503 S.W.2d 185 (Tenn. 1973), where it was held that a juvenile who had been found not guilty in a "civil" proceeding in juvenile court could not be tried again for the same offense upon an appeal *de novo* to the circuit court. Stating that the test for double jeopardy purposes must be "the nature and essence of the proceeding rather than its title," the Court cited federal case law to support its conclusion that double jeopardy applied. The Court then held
>
> > that a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil in substance, in that, it seeks punishment to vindicate

-5-

public justice and, therefore, constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions . . .

*Id*. at 660.

In a concurring and dissenting opinion, Justice Harbison noted the long line of Tennessee cases, just discussed, which traditionally held that proceedings for the violation of a city ordinance are civil for purposes of appeal and procedure and opined "that these rules are not affected by the present holding, according to my understanding." This position was approved by the Court in *Metropolitan Government of Nashville & Davidson County v. Allen*, *supra*, 529 S.W.2d at 706-707, wherein it was remarked that the language of the majority in *Miles* "may have been overbroad" when it mentioned the "implied" overruling of *O'Haver* and *O'Dell*, and suggested that *O'Haver* and *O'Dell* were "not authority" for the double jeopardy question decided in *Miles* and that there was no conflict between those cases and *Miles* in holding that proceedings involving violation of city ordinances are at least procedurally, civil in nature.

*Myers*, 787 S.W.2d at 926-927. After discussing the above cases and several others, the *Myers* Court determined that a defendant was entitled to a jury trial on an appeal to circuit court based on the violation of a city ordinance, provided a jury trial was timely demanded. *Id*. at 927. The *Myers* Court then concluded as follows:

In summary, for 130 years proceedings to recover fines for the violation of municipal ordinances have been considered civil for the purposes of procedure and appeal, although the principles of double jeopardy have recently been determined to apply in such cases. *See Miles, supra; cf. United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)(discussing under what circumstances a *civil penalty* constitutes "punishment" for the purposes of double jeopardy analysis). The basis of the cases, accepted in *Allen-Briggs*, is that an appeal to circuit court of a judgment of a municipal court– even when the defendant is the appellant– is an appeal in a civil action brought by the municipality to recover a "debt." Being such, where requested, the appealing defendant is entitled to a jury trial as in any other civil case, despite the fact that no direct penalty of imprisonment or fine greater than $50 is involved.

*Myers*, 787 S.W.2d at 928. Based on the *Miles* and *Myers* opinions by our Supreme Court, we conclude that the prohibitions against double jeopardy apply to proceedings involving Defendant's alleged violation of these municipal ordinances.

Both Plaintiff and Defendant are of the opinion that the City Court Judge found Defendant in violation of the municipal ordinances for the time period between March 16 and April 20, 1999. This conclusion is not supported by our review of the admittedly confusing record. During the trial in Circuit Court, the dates on which Defendant was originally convicted in City Court were at issue. Although the Circuit Court was not provided with a transcript of the March 16 hearing or the events which occurred on the May 18 "check-back" date in City Court, a tape recording of these hearings was played to the Circuit Court and transcribed into that Court's record. Based on this transcription, at the May 18, 1999, hearing, the City Court Judge stated:

> I find that you are guilty of violating the statutes of Church Hill in respect to vehicle salvage parts and automobile storage without permits. I think that you have attempted to keep the property neat. You've cleaned it up and it's both – you've made those attempts. But I find that you are guilty of the fines, or guilty of the violation of the statute, and I fine you a total fine on each of those two citations of $750.00 and costs of $30.75. That's $1,561.50. From the last date that we were here until April 20th, *I do not assess any fines against you from our last court date to the present* . . . . (emphasis added).

The City Court Judge then entered judgment against Defendant as follows:

(1) § 8-301 for the "first" violation, with a fine and costs totaling $55.75;

(2) § 8-302 for "first & 30 days subsequent violations," with a fine and costs totaling $780.75; and

(3) § 8-304 for "first & 30 days subsequent violations," with a fine and costs totaling $780.75.

Our conclusion that the City Court Judge found these violations to have occurred prior to March 2, 1999, is supported by the above comments by the City Court Judge. On May 18, 1999, the City Court Judge specifically stated that he was not assessing any fines from the "last court date" (March 16) "to the present" (May 18). Regardless of what the City Court Judge may have said at the March 16 hearing, Judgment was not entered by the City Court Judge until May 18, and it is that Judgment which must be considered on this appeal.

The officer issuing the Misdemeanor Citation testified that he videotaped Defendant's property on January 27, 1999, and then returned "thirty" days later, on March 1, 1999 and the property was essentially in the same condition. Defendant was later found guilty in the City Court for a "first" violation of § 8-301. We can only assume that this was for January 27, 1999. Defendant was also found guilty in the City Court of the "first" and thirty days of subsequent violations for both §§ 8-302 and 8-304. We likewise must assume these violations were for January 27, plus 30 days, up to and including February 26, 1999. On appeal, the Circuit Court Judge found Defendant guilty of violating all three ordinances for the four day period prior to March 2, 1999, which would be

-7-

February 26 through March 1, 1999. Having determined that Defendant cannot be placed in jeopardy twice for the same offense, we reverse the Circuit Court's finding of guilt for the four violations of § 8-301 because the January 27, 1999, violation and conviction was the only alleged violation that could be retried in Circuit Court, and that court did not find Defendant guilty of a violation of § 8-301 for that date. With regard to the violations of §§ 8-302 and 8-304, we reverse the convictions for February 27, 28 and March 1, 1999, because the City Court apparently did not find violations on these three days. We affirm the convictions of §§ 8-302 and 8-304 for February 26, 1999, because both the City Court and the Circuit Court found violations on this day and, therefore, Defendant was not placed in double jeopardy as Defendant appealed his conviction for the violations on that date. In summary, Defendant is correct that he could not be retried in Circuit Court for violations of ordinances on certain days for which he was tried and not found guilty in City Court.

Plaintiff argues that since Defendant appealed the decision of the City Court Judge, all matters tried originally in City Court are then retried in Circuit Court because the appeal is *de novo*. While this may be true in most cases appealed to circuit court *de novo*, in cases where jeopardy has attached, such as the present case, it would be fair to assume that Defendant did not "appeal" to Circuit Court the alleged violations for which he was not convicted in City Court. Because of double jeopardy considerations, the only alleged violations that could be retried in Circuit Court were those upon which Defendant was convicted in City Court. It is the retrial of those convictions that are appealed to Circuit Court *de novo*. Plaintiff's argument is unpersuasive.

Because we reverse the convictions for violations of § 8-301, the issue of whether the doctrine of merger prevents simultaneous convictions for violations of §§ 8-301 and 8-302 is rendered moot.

## Conclusion

The decision of the Circuit Court is reversed in part and affirmed in part. This case is remanded to the Hawkins County Circuit Court for the collection of fines and costs for the municipal code violations as affirmed. Exercising our discretion, costs of this appeal are taxed one-half to the City of Church Hill and one-half to Patrick H. Reynolds, III, and his surety.

 

 

 

_____
D. MICHAEL SWINEY, JUDGE