**Tommy FARR, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Jan. 3, 1974.

Certiorari Denied by Supreme Court
March 4, 1974.

Robert H. Crawford, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Richard S. McNeese, Asst. Atty. Gen., Nashville, Franklin Groves, Jr., Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

WALKER, Presiding Judge.

From his conviction of assault with intent to commit murder in the second degree and sentence to one to five years' imprisonment, the defendant below, Tommy Farr, appeals in error.

The defendant first contends that the Criminal Court of Hamilton County was without jurisdiction to try the case and erred in not sustaining his motion to quash the indictment. He says the criminal court had no jurisdiction because the municipal court lacked jurisdiction to (1) conduct a preliminary hearing on the state warrant it issued and (2) to bind the de-

fendant over to the grand jury. He cites T.C.A. §§ 40–427–40–430 by which municipal courts in counties having a population of not less than 240,000 nor more than 400,000 were divested of jurisdiction wherein a violation of the laws of Tennessee is charged.

A like argument was presented in Mullins v. State, 214 Tenn. 366, 380 S.W.2d 201, and decided adversely to the defendant's contentions. There the defendant was bound to the Washington County grand jury by a city judge. The defendant was indicted and subsequently convicted of driving while intoxicated. In disposing of his contention that the conviction should be reversed because the city judge had no jurisdiction either to impose punishment or bind the defendant to the grand jury, the Supreme Court held:

"This binding over does not have to be by warrant or anything else as when the facts were properly presented to the Grand Jury an indictment might be found under these facts regardless of how the man was bound to the Grand Jury."

To the same effect is Jones v. State, 206 Tenn. 245, 332 S.W.2d 662, where the court said: ". . . (A)ll questions as to the sufficiency of the warrant are foreclosed by the finding of an indictment, . . ." See also Vowell v. State, 207 Tenn. 598, 341 S.W.2d 735; Manier v. Henderson, 1 Tenn.Cr.App. 341, 442 S.W. 2d 281.

The defendant relies on an unreported case of this court, Harris v. State, decided January 1972 at Knoxville. Although that case arose in Hamilton County, it did not involve an indictment and is not applicable to the facts and procedure of this case.

■ In the case before us, the Hamilton County Criminal Court properly had jurisdiction of the defendant by the return of the indictment The indictment, being regular on its face, was not subject to a motion to quash. This assignment is overruled.

On April 2, 1973, three days before his trial, the defendant filed a motion to dismiss the charge because he had been denied a speedy trial.

The incident occurred in August 1971 and a preliminary hearing was held in December 1971. The defendant was indicted March 8, 1972, and the case was set for trial June 7, 1972. On June 5, 1972, the case was continued because the state was not ready. It was reassigned for September 5, 1972, and again continued until November 8, 1972, and then reassigned until January 18, 1973. At that time the case was continued because of a death in the family of a state's witness. The reasons for a number of resettings do not appear.

■ In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court held a defendant's claim of denial of a speedy trial is subject to a balancing test and courts should consider such factors as (1) length of the delay, (2) the reason for the delay, (3) the defendant's assertion or nonassertion of the right and (4) prejudice to the defendant by the delay.

In State v. Bishop, Tenn., 493 S.W.2d 81 (1973), our Supreme Court considered the factors set out in Barker v. Wingo, supra. It held that a ". . . (T)otal delay of a little over two years is not per se extreme and is not such a length of delay that from this fact alone we would presume prejudice."

The reason for the delay before indictment does not appear. In passing on the speedy trial motion, the trial judge announced that the state was not ready June 5, 1972, and it received a continuance. The continuance January 18, 1973, to April 5, 1973, was because of the death in the family of a state's witness. The record does not reflect reasons for other continuances and resettings.

In discussing reason for the delay, the court in Barker v. Wingo, says a deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded dockets should be weighed less heavily but nevertheless should be considered. A valid reason, such as a missing witness, should serve to justify appropriate delay. The record does not indicate any delay to hamper the defense. At most the January 18, 1973, delay, on which the defendant principally relies, may be attributed to negligence on the state's part. At trial the witness was not used, his testimony being cumulative.

The first time the defendant asserted his right to a speedy trial was April 2, 1973. The fact that a defendant fails to demand a speedy trial is not a waiver of the right, but is one of the factors to be considered. In Barker v. Wingo the court emphasized that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

The defendant says he was prejudiced because a witness who would have testified in his behalf became unavailable on account of the trial delay.

This witness, Bonnie Worthington, was not under subpoena by the defendant and had not appeared in court at any time. The defendant testified he lost track of her before the case started coming to trial. The state had sought to obtain her as a witness but was unable to locate her. The failure of this prospective witness to testify for the defendant cannot be attributed to the delay.

The defendant was on bond and was not subjected to oppressive pretrial delay.

With all of the factors in this case considered and balanced under the tests of Barker v. Wingo and State v. Bishop, we do not think the defendant has been denied a speedy trial and this assignment is overruled.

The defendant challenges the sufficiency of the evidence.

The state's proof showed that on the night of August 19, 1971, the defendant and Jack Ridings had a fist fight at the Stagecoach Inn in Chattanooga in which the defendant received injuries to his mouth. In the defendant's presence, one Virgil Bullock asked Ridings to meet him for breakfast at the Colony Restaurant. The defendant then went to the hospital to get treatment. About an hour later he, Harold Tucker and Bonnie Worthington went to the Colony Restaurant. Ridings and Bullock were leaving. The defendant told Ridings that he had stitches taken in his mouth and he was going to get even with him (Ridings). The defendant took a pistol from his glove compartment and shot Ridings five times, once in the back. He then pointed the pistol at Bullock and asked if he wanted some, too.

The defendant testified that Ridings was a much larger and more powerful man than he; that he refused to fight Ridings at the Stagecoach Inn but Ridings whipped him anyway; that he did not go to the Colony Restaurant to find Ridings; that he kept the pistol in the car as part of his work; that at the Colony Restaurant Ridings asked him if he liked what he had got; that he tried to talk Ridings out of any more trouble but Ridings persisted, said he (Ridings) was going to give him some more and started toward the defendant. The defendant said Bullock had his knife out and both Bullock and Ridings started on him. He then got his pistol and shot Ridings in necessary self-defense.

The jury accepted the testimony of the state's witnesses and has resolved the conflicts in the testimony. There is ample evidence from which, if death had resulted, the defendant would have been guilty of murder in the second degree. Malice may be presumed from the use of a deadly weapon. Bailey v. State, Tenn.Cr.App.,

479 S.W.2d 829. The evidence abundantly sustains the verdict of assault with intent to commit murder in the second degree. The assignments on the weight of the evidence are overruled. State v. Grace, Tenn., 493 S.W.2d 474.

All assignments have been considered and are overruled.

The judgment is affirmed.

OLIVER and GALBREATH, JJ., concur.